# Hughes et al. v. McKenzie.

*Bill in Equity to have Deed declared a Mortgage.*

1. *When deed absolute in form declared a mortgage.*—On a bill, filed for that purpose, a deed, absolute on its face, will be declared a mortgage, when it is shown that the complainant purchased the lands, and upon payment of three-fifths of the purchase price received from the vendor a bond for title, that defendant, under an agreement with complainant, advanced for him to the vendor the balance of the purchase money, for which amount, with agreed interest, complainant executed his note to defendant, which note was a continuing debt, that the vendor had no negotiation with the defendant for the sale of the land, but executed the deed to him by direction of complainant, in consideration of the payment by him for complainant of the balance due upon the land, which balance was greatly less than the true value of said land.

APPEAL from the Chancery Court of Crenshaw.
Heard before the Hon. JOHN A. FOSTER.

On the 22d February, 1890, the appellee, Charles McKenzie, filed his bill in the chancery court of Crenshaw county, against Richard S. Hughes and others, the appellants; and alleged therein that about eight years before the filing of the bill, he purchased from T. J. Boswell and wife the 400 acres of land described in the bill,

for the agreed price of $1,000 ; that he paid $600 in cash, and agreed to pay the remaining $400 at a future day, for which he executed to said T. J. Boswell his promissory note, and Boswell and wife gave complainant their bond to make to him a conveyance to said land, with the usual covenants of warranty, upon the payment of said note for the balance of the purchase money ; that on the 29th September, 1884, complainant borrowed from defendant Hughes the sum of $400, and procured said Hughes to pay the same to said Boswell for him ; and for the purpose and with the intention of securing the repayment of that sum so borrowed to said Hughes, complainant procured and authorized said Boswell and wife to convey said land to said Hughes ; that contemporaneously, Hughes executed to complainant a defeasance, to the effect, that said conveyance to him was intended to be and was a mortgage to secure the repayment of said sum of $400 borrowed by complainant from him ; that afterwards, about the 1st of January, 1·86, Hughes entered into the possession of the said lands, under his said mortgage, and now retains the possession thereof, together with about $600 rents, derived therefrom since he went into their possession.

Complainant further alleges, that he has paid his indebtedness to said Hughes, but if he is mistaken, he is ready and willing and offers to pay him whatever sum the court may ascertain to be due and owing by him to said Hughes on said note and mortgage.

He further alleges that on the 28th March, 1884, he and his wife mortgaged said lands to one M. W. Wimberly to secure a debt therein named ; that said Wimberly sold and transferred said debt and mortgage to Thomas F. Owen, and afterwards, he sold and transferred the same to H. T. Wimberly ; that complainant may be due and owing something on last named mortgage, and if so, he is willing and offers to pay whatever sum the court may ascertain to be due and owing in that behalf. The said Hughes, H, T. Wimberly and Mrs. N. F. McKenzie, wife of complainant, are made parties defendant to the bill.

The prayer is, that the conveyance from T. J. Boswell, and wife to said Hughes be decreed to be a mortgage, to secure said sum of $400 ; that a reference be ordered to the register, to ascertain what, if any thing, is due and

[Hughes et al. v. McKenzie.]

owing by complainant on said mortgage to said Hughes and said Wimberly; that complainant be permitted to pay any such sums, and that, thereupon, said mortgages be cancelled and plaintiff put into possession of said lands; that said Hughes be held to account for the rents of said lands to complainants since he went into possession of the same, and for general relief.

H. T. Wimberly answered the bill, claiming that there was due and owing on his mortgage about $395, and that it is a valid and superior lien to all others on said lands, as security for the payment of said indebtedness. The defendant Hughes answered denying the transaction of the Boswell conveyance to him, as stated by complainant, and states the same to have been as follows: that complainant applied to him, before said conveyance was executed to borrow the remaining sum due as purchase money, proposing to give defendant a mortgage on said lands as security, which proposition defendant refused to accept; that complainant came again to borrow the four hundred dollars for the purposes specified, and stated that if defendant would pay off the remaining note due to Boswell on the land, he would let defendant have it on his own terms; and defendant agreed, if Boswell would make to him a deed in fee to the lands, he would pay him the $400; whereupon complainant met defendant at the house of Boswell, and defendant then and there paid him the $400, and he and his wife executed the conveyance to defendant. And, afterwards, defendant verbally contracted to sell the lands to complainant for $480, provided it was paid within twelve months, and took the note for that sum from him, payable Oct. 1st, 1885; that defendant made no other contract with complainant besides this one, except that it was further agreed, that if complainant could not pay that sum, within the twelve months, he was to pay $150 rent for 1885; that complainant failed to pay either said sum or the rent, and at request of complainant, defendant agreed to allow him to retain possession for the year 1886 at $100 rent, and for the year 1887, at the agreed rent of $150; and in the latter part of 1887, complainant came and stated that he was unable to pay either rent or purchase money, whereupon defendant cancelled all the rent contracts, and agreed to cancel the note for $480, and remit the interest on a note of complainant and

27

one Merrill for about $80, whereupon the whole transaction was closed, complainant moved off, and defendant took possession of said lands. The deed from Boswell and wife to defendant recites the consideration thereof to be $600 paid by complainant, and $400 paid by defendant, and refers to complainant's note to defendant for $480, and the deed bears the same date as said note.

The court, upon pleadings and proofs, rendered its decree declaring said deed to be a mortgage to secure said sum of money advanced by defendant Hughes to complainant, and ordering an account. The defendants appeal, and assign this decree as error.

GAMBLE & POWELL, for appellants, cited, *Botsford v. Burr*, 2 Johnson's Ch. 405; *Knaus v. Dreher*, 84 Ala. 319, 4 So. Rep. 287; *Micou v. Ashurst*, 55 Ala. 607; *Moseley v. Moseley*, 86 Ala. 289, 5 So. Rep. 732; *Downing v. Woodstock Iron Co.*, 93 Ala. 263, 9 So. Rep. 177.

J. C. RICHARDSON, *contra*, cited, *Downing v. Woodstock Iron Co.*, 93 Ala., 263, 9 So. Rep. 177; *Parmer v. Parmer*, 88 Ala. 545, 7 So. Rep. 657; *Daniels v. Lowery*, 92 Ala. 521, 8 So. Rep. 352; *Douglass v. Moody*, 80 Ala. 66; *Turner v. Wilkinson*, 72 Ala. 366; *Rapier v. Gulf City Paper Co.*, 77 Ala. 134; *Nelson v. Kelly*, 91 Ala. 574, 8 So. Rep. 690.

HARALSON, J.—There were four persons present when the deed from Boswell to defendant was executed and delivered,—the complainant, the defendant, Lee and Boswell. The deed from Boswell to defendant is absolute in form. It recites a consideration of $1,000 for its execution,—$600 as having been paid by complainant, and $400 by the defendant.

There is no dispute of the fact, that about 1882 complainant purchased the lands in controversy from Boswell, for the consideration of $1,000; that he paid in cash a part of the purchase money, and executed his note for the balance, and Boswell gave complainant his bond, conditioned to make title to the land upon the payment of the purchase money in full; and, at the date of said conveyance from Boswell to defendant, complainant had paid to Boswell $600, making payment on that day, as Boswell says, of $40, leaving a balance due to be

paid of $400. On the day that said conveyance was executed, and on which defendant paid to Boswell four hundred dollars, complainant executed to defendant Hughes a note for $480, payable on the first day of October, 1885, the consideration being, as expressed, "for value received of him."

Complainant deposes in reference to this note, that it was for money borrowed from defendant, with which to complete the payment for the land to Boswell; that defendant had agreed to let him have the sum needed for the purpose, at 20 *per cont.* interest, and that this note is for that sum, with $80 added as interest, and that defendant gave to him a written obligation to reconvey the land to him on the payment of that note, which obligation was destroyed by fire, with his dwelling, in the fall of 1887; and that the deed was executed to defendant to secure that loan.

J. A. Lee testifies, that he was acquainted with the land transaction between complainant, defendant and Boswell; that he was present, when the conveyance from Boswell to Hughes was executed; that its acknowledgment was taken before him as an officer, and the deed was made for the purpose, and under the agreement by defendant and complainant, that it was to secure to defendant the payment of $400 due by complainant to him; and he states, as his best recollection, that there was a written agreement between them to that effect, the contents of which, as he gives them, were, "that the $400 with interest should be due and payable on the 1st day of October, 1885, and if said McKenzie failed to pay said amount when due, said Hughes was to have the reasonable rent of the land until he was paid the said amount."

T. J. Boswell testified, that the consideration, as expressed in his deed to the defendant, is true; that complainant paid him $600, and defendant paid him $400, at the instance and request of complainant; that he knows nothing of the transaction between the complainant and defendant, further than that he executed the deed at the request of complainant; that his recollection is, complainant was to pay defendant $480 on the first of October, 1885, and if he did so, defendant was to make him a deed at that time, and if complainant failed, he was to pay defendant $150 rent for 1885.

The defendant denies the transaction as stated by complainant, and swears that he paid the money with the understanding, that the land was to be his, but he agreed, afterwards, that if complainant would pay him $480 on October 1st, 1885, he would sell and convey to him the lands, but failing, he was to pay $150 rent for that year ; that he did fail, and defendant rented the place to him for $100 for 1886, and $150 for 1887, and in the latter year he gave up the place to defendant, stating that he would not remain on it another year, for it. Thereupon, defendant told him he did not desire his place for less than its value, and he would surrender his rent claims,—amounting to about $400,—his interest on the Merrill note,—about $80,—and the $480, at which complainant expressed himself satisfied, and in a short while moved off the lands.

One Armstrong testified for defendant, that he heard complainant say, he owed defendant and turned over the place to him for the debt, that he was unable to pay for it ; that plaintiff also said, if he did not pay the purchase money, he was to pay rent.

J. L. Merrill testified, that he had signed a note as security for complainant for $350 or $400 to defendant, borrowed money, with which complainant made the first payment on the lands bought from said Boswell; that complainant stated, defendant was to pay Boswell the balance due on the land,—about $400,—cancel the note for $350 or $400 held against complainant and witness for money borrowed to pay on said lands, and that the lands were to belong to defendant ; but complainant also stated, that if he could raise the money defendant had paid to Boswell for him, defendant was to convey the lands to him.

Jno. S. Whittington for defendant testified, that complainant told him, that he had bought the place from Boswell, but could not pay for it and had never received a deed, and defendant had purchased it, and afterwards rented it to him for ten years, and being unable to pay the rent he was going to give it up to the defendant.

From the foregoing, it is seen that there is very great conflict in the evidence, upon the question at issue in this cause, as to whether this transaction is a conditional sale, or an equitable mortgage to secure a debt. As between complainant and Boswell, equity regards the trans-

action as executed, and as operating to transfer the
estate from the vendor, Boswell, and to vest it in the
vendee, the complainant. "By the terms of the contract
the land ought to be conveyed to the vendee, and the
purchase price ought to be transferred to the vendor;
equity, therefore, regards these as done; the vendee as
having acquired the property in the land, and the ven-
dor as having acquired the property in the price. The
vendee is looked upon and treated as the owner of the
land."—1 Pom. Eq. Jur., § 368; 1 Story Eq. Jur., § 790;
2 *Ib.* 1212.

In equity, therefore, complainant is regarded as
having had a perfect title to the land, and as between
Boswell and defendant and complainant, in the convey-
ance by Boswell to defendant, the complainant was the
real grantor. The evidence is without conflict, that
Boswell had no contract of sale with defendant, and
that he executed the conveyance at the instance, and by
the direction, of complainant. Nor from the evidence
are we permitted to doubt, that the $400, which was
paid by defendant to Boswell, as a part consideration for
the conveyance, was paid for complainant as a loan to
him, to enable him to fulfill his contract of purchase.
The conveyance bears inherent evidence of the correct-
ness of this conclusion. Complainant and J. A. Lee
swear positively to the fact, Boswell's evidence is con-
firmatory of it, and the evidence of the other witnesses
does not disprove it. Complainant gave his note for
$480 on the occasion to defendant. He says $400 of
this note was for the amount defendant loaned him,—a
fact that Lee and Boswell's evidence strongly confirms,—
and that the $80 was the interest he charged him on it,
at 20 *per cent. per annum.* It is coincident that $400 was
the balance due on the land, which the conveyance re-
cites defendant paid, and $80 is 20 *per cent.* on that sum
for a year, the two making the exact sum for which
complainant gave his note to defendant, and suggest the
correctness of complainant's evidence as to the consid-
eration of that note, especially since defendant offers no
explanation of how the note happened to be for $480.
Why any note should have been given at all, if defend-
ant's version of the transaction is correct, it is not easily
understood, for the note recites that it is for value that
day received by complainant from defendant, and the

defendant says the agreement to resell the lands to complainant was verbal, entered into after the lands had been conveyed to him. It would have been more natural and far better, if defendant's account of the transaction is true, for it to have expressed the consideration as defendant states it to have been.

From a careful review of the evidence, we ascertain that the relation of debtor and creditor did not exist between the complainant and defendant prior to the transaction we consider; that it began in a negotiation for a loan from the defendant to the complainant; that the negotiation ended in defendant advancing for complainant to Boswell the sum of $400, for which complainant executed his note to defendant for $480, payable on October 1, 1885; that said note has been from that date to this a continuing debt in the hands of defendant against the complainant, on which he has been, and is liable to suit; that Boswell had no negotiation with defendant for the land, but executed his deed to him by the direction of complainant, in consideration of the payment by defendant for complainant of the balance due on the land; that the land was sold in the beginning, and was conveyed for $1,000, and that $400, the sum defendant says he paid as a consideration for his conveyance, is in great disproportion to its real value. After this, if any doubt remained as to the character of the transaction, we would resolve it in favor of its being a security or equitable mortgage for a loan.—*Daniels v. Lowery*, 92 Ala. 521, 8 So. Rep. 352; *Knaus v. Dreher*, 84 Ala. 320, 4 So. Rep. 287; *Vincent v. Walker*, 86 Ala. 333, 5 So. Rep. 465; *Turner v. Wilkinson*, 72 Ala. 366.

The defendant does not deny that complainant procured him to pay the balance due by himself on the land to Boswell, and, according to his account of the transaction, the agreemet was, that if complainant repaid the $480 in twelve months, he should have the property. Such a transaction is construed in equity to be a mortgage and not a conditional sale.—*Nelson v. Kelly*, 91 Ala. 574, 8 So. Rep. 690.

This case is not different in substance from that of *Parmer v. Parmer*, 88 Ala. 545, 7 So. Rep. 657. In that case, H. A. Parmer had bought the land from Mrs. Allen, and had not received a conveyance. He induced her to convey, in absolute form, the same to H. K. Parmer,

[Marengo County v. Lyles.]

and took from the latter an agreement to reconvey the land to him, upon the payment of the debt. It was held to be a mortgage. Referring afterwards to this case, to distinguish it from cases which are here cited by appellant, it was said : "In equity, Parmer, the complainant, had a perfect title to the land ; the conveyance was made at his instance, to secure his debt, and he was, therefore, the real grantor—all the title, equitably considered, which the defendant held came from complainant—and the stipulations between the parties, were the stipulations of the real grantor and grantee, and for the benefit of the former."—*Downing v. Woodstock Iron Co.*, 93 Ala 268, 9 So. Rep. 177. This language is precisely applicable to this case, to show the relations of complainant and defendant, and the effect of their dealings.

We find no error in the record and the decree of the chancery court must be affirmed. In stating the account ordered, it will be well for the register to ascertain and report to the court, the amount, if any, that may remain due and owing by complainant to H. T. Wimberly, on his mortgage to him.

Affirmed.